PEOPLE v. BERGIN

1. CRIMINAL LAW — PRELIMINARY EXAMINATION — EVIDENCE — PROBABLE CAUSE — REASONABLE DOUBT.

Defendant may be bound over for trial if evidence adduced at the preliminary examination shows that a crime has been committed and that probable cause to believe that the defendant committed it; it is not necessary to show guilt beyond a reasonable doubt at a preliminary examination.

2. EVIDENCE — ADMISSIBILITY — PHOTOGRAPHS — HOMICIDE — RELEVANCY.

Admission of photographs of the corpse of a decedent, who had been beaten to death, in trial for murder *held*, not reversible

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 442, 443.
[2] 29 Am Jur 2d, Evidence §§ 785, 792.
[3] 29 Am Jur 2d, Evidence §§ 789, 792.
[4] 29 Am Jur 2d, Evidence §§ 786, 787.
[5] 29 Am Jur 2d, Evidence §§ 785–787.
[6] 53 Am Jur, Trial § 968.
[7] 58 Am Jur, Witnesses § 647.
[8] 40 Am Jur 2d, Homicide §§ 498, 506, 534, 535; 53 Am Jur, Trial § 511.
[9] 39 Am Jur, New Trial §§ 156, 164.

error, where they clarified testimony as to victim's appearance and condition and supported the prosecution's theory of felony-murder (CL 1948, § 750.316).

3. EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY.
Admission of photographs into evidence is not error simply because they may prejudice the jury, the test of their admissibility being whether or not the probative value of such photographs outweighs their probable prejudicial effect.

4. EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY.
Photographs are inadmissible where their relevancy is unquestionably overcome by an inherently prejudicial nature.

5. EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY—DISCRETION.
Admissibility of allegedly prejudicial and inflammatory photographs is within the discretion of the trial judge.

6. JURY—FORBIDDEN CONVERSATION—MISTRIAL.
Denial of defendant's motion for mistrial based on alleged conversation wherein two jurors discussed his guilt while trial was in progress *held*, not reversible error, where the trial judge investigated by questioning both jurors and a third person in the presence of both attorneys and accepted their statements that no such conversation had occurred.

7. WITNESSES—CROSS-EXAMINATION OF DEFENDANT—OBJECTIONABLE QUESTION—GOOD FAITH—REVERSIBLE ERROR.
The propounding of objectionable questions, in good faith, during cross-examination of a criminal defendant is not a cause of reversible error.

8. HOMICIDE—FELONY-MURDER—INSTRUCTIONS TO JURY.
Trial judge did not err in instructing the jury on the felony-murder rule where the evidence was sufficient to justify the jury's finding a homicide coincident with the perpetration of a felony (CL 1948, § 750.316).

9. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—ACCOMPLICE.
Motion for a new trial on the basis of newly-discovered evidence was properly denied where the evidence in support of the motion, a letter from defendant's accomplice, merely restated what defendant had said at trial, in the presence of a jury, and was not likely to produce a different verdict.

Appeal from Kent, Stuart Hoffius, J. Submitted Division 3 November 14, 1968, at Grand Rapids.

(Docket No. 3,522.)   Decided March 25, 1969.   Leave to appeal denied June 18, 1969.   See 382 Mich 762.

Robert Charles Bergin was convicted of first-degree murder.   Defendant appeals.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, *S. J. Venema,* Chief Appellate Lawyer, and *W. J. Nykamp,* Assistant Prosecuting Attorney, for the people.

*Richard G. Leonard,* for defendant.

BEFORE: HOLBROOK, P. J., and T. G. KAVANAGH* and McINTYRE,** JJ.

HOLBROOK, P. J.   This is an appeal from a conviction before a jury for the crime of first-degree murder.   CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).

The pertinent facts are as follows: during the morning of August 4, 1966, the defendant and two others, Donald Carnes and Benny Pesta, began drinking together.   Mr. Pesta was an older man who had received about $87 from his pension checks the previous day.   Shortly before noon, the defendant, Carnes and Pesta were observed driving off in a red convertible.   Defendant was driving and Carnes and Pesta were sitting in the rear seat.

About 12:15 the same day, a bulldozer operator working in a secluded area north of Grand Rapids, Michigan, heard a car stop.   He heard the vehicle's doors closing, cursing, and what sounded like blows.

---

\* THOMAS GILES KAVANAGH, Justice of the Supreme Court, assigned to sit on the Court of Appeals from February 27, 1969, "until the work assigned has been completed" pursuant to Const 1963, art 6, § 4, and CLS 1961, § 600.225, as amended.

\*\* Circuit Judge, sitting on the Court of Appeals by assignment.

He saw a red convertible drive away. With his partner, the bulldozer operator looked into the situation and discovered a man badly beaten. The police were summoned, but the man was pronounced dead on arrival at the hospital.

Defendant was arrested later the same day. He was charged with, and tried for, the crime of murder; the jury returned a verdict of guilty of murder in the first degree. On February 21, 1967, defendant was sentenced to life imprisonment.

Defendant claims that there was not enough evidence adduced at the preliminary examination to permit binding him over for trial. The preliminary examination transcript, upon a careful reading, presents sufficient evidence to show the murder of the victim and probable cause to believe that defendant had perpetrated the crime. Defendant's guilt need not be shown beyond a reasonable doubt at the preliminary examination. *People* v. *Medley* (1954), 339 Mich 486; *People* v. *Ray* (1966), 2 Mich App 623.

At trial, the prosecution introduced, over defendant's objections, two colored 3-1/2-inch x 3-1/2-inch photographs showing the victim's head in a badly beaten condition. Defendant contends that because at trial it was stipulated the victim was in fact dead, and was in fact Pesta, the photographs could shed no light on any material point at issue. He further argues that the gruesome nature of the photographs could only prejudice and inflame the jury. and that therefore their admission constituted error requiring a new trial.

Counsel for both sides agree that the proper rule applicable to the admissibility of the photographs is found in *People* v. *Becker* (1942), 300 Mich 562, 565, wherein it is stated:

"The general rule upon the admissibility of this kind of evidence is that it is admissible if helpful in throwing light upon any material point in issue."

23 CJS, Criminal Law, pp 357, 358, § 852(1) and 23 CJS 51 (Cum Supp) states:

"Photographs of a person deceased or of a body have been held admissible for purposes of identification, and, where relevant, photographs have been held admissible to show the appearance, condition, position, or location of a deceased or injured victim's body, or to indicate the location, nature, or extent of wounds or injuries. Photographs representing a victim's wounds may be admissible to clarify and illustrate the testimony of witnesses, for proving the *corpus delicti,* and corroborating testimony as to identity of the victim even though accused offers to make a judicial admission as to some or all of these matters. \* \* \*

"Photographs of corpses or of various parts of the body are admissible to corroborate prosecution's theory as to motive."

The questions of death and of identity were not in issue because of defendant's stipulations. However, for purposes of clarifying and illustrating testimony relating to the victim's appearance and condition (the nature and extent of the wounds inflicted), the corroboration of identity, and particularly for purposes of substantiating the prosecution's theory of felony-murder, the photographs were properly admitted.

23 CJS, Criminal Law, § 852(1), pp 352, 353, comments on the admission in evidence of photographs which tend to prejudice the jury and gives the test to be applied in such cases:

"*As a general rule, where photographs are otherwise properly admitted, it is not a valid objection to their admissibility that they tend to prejudice the*

*jury.* Ordinarily photographs are not inadmissible merely because they bring vividly to jurors the details of a shocking crime or tend to arouse passion or prejudice, as in the case of unpleasant, gruesome, or horrifying photographs. The test of admissibility in such cases is whether the probative value of the photographs outweighs their probable prejudicial effect. Accordingly, photographs should be excluded where their logical relevancy will unquestionably be overwhelmed by the inherently prejudicial nature of the particular picture." (Emphasis supplied.)

The two photographs in question are not pleasant to view. They indicate a severe beating of the head. In this regard they were relevant to the prosecution's theory of a felony motive of defendant, and to the jury's ascertaining whether the victim's cane or sticks were used in the commission of the crime.

The question of the admissibility of photographs which are objected to as prejudicial and inflammatory is within the discretion of the trial judge. Finding no clear abuse of this discretion under the facts and circumstances of this case, we conclude that the two photographs in question were properly admitted.

Defendant made a motion for mistrial on the ground of a forbidden conversation between 2 jurors which allegedly occurred in a lunchroom during the course of trial. His mother claimed to have overheard a juror mention defendant's name and say to another juror, "I find him guilty". The trial judge investigated the matter in the presence of counsel for both sides. Both jurors denied that any discussion of this matter had taken place. Also, a third person who was present with the 2 jurors stated that their conversation contained no comments relative to defendant's guilt or innocence. We find no abuse of discretion in the trial court's denial of defendant's motion for mistrial.

There is no merit in defendant's claim of prejudice as to the prosecution's question of defendant, "You knew nobody was going to find him [the victim] back there unless they saw you do it, didn't you"? The question was objected to, the objection was sustained, and the question was ordered stricken. *People* v. *Tubbs* (1907), 147 Mich 1, holds that the propounding of objectionable questions in good faith during cross-examination of a defendant does not present reversible error and is controlling.

We find no reversible error in the admission of some pine needles and a whiskey bottle taken from the scene of the crime and a photograph of the area. Further, the trial court committed no error in allowing testimony and exhibits proffered by the prosecution in support of its theory that the victim died in the perpetration of a felony, to wit, robbery. Testimony allowed in evidence relating to what was found on Carnes at the time of his arrest was also proper. *People* v. *Wilson* (1903), 133 Mich 517. At the close of the prosecution's case, defendant made a motion to dismiss on the ground that the people had failed to establish a *prima facie* case against defendant. After a careful review of the evidence we find no error committed by the trial court in denying the motion.

With reference to the trial court's instructions, defendant contends that error was committed in giving the jury a charge on the felony-murder rule. The theory of the people throughout trial was that defendant and Carnes perpetrated the death of Pesta in the course of robbing him of his pension money. Sufficient evidence was presented to permit the people's theory to go to the jury for factual determination and therefore the charge was a proper one under the circumstances,

Finally defendant asserts that the trial court committed error in denying his motion for new trial based upon newly discovered evidence. The newly discovered evidence was a letter written by Carnes from Marquette prison to defendant's parents. The letter was written after defendant's trial. For the most part it reiterates defendant's theory of the case —it is exculpatory as to defendant's striking the victim or intending to commit robbery, but admits defendant's presence at the scene of the crime. The trial court denied defendant's motion for new trial stating in part:

"I should point out in the first place that taking this, everything written in this letter as true and assuming for the moment that such testimony was received in evidence, that the jury might still return the same verdict, because it is my recollection that the case went to the jury and I know it went to the jury on first-degree murder with the usual premeditation, second-degree murder, manslaughter and murder, robbery, in accordance with the statute.

"The jury, of course, in returning its verdict never did disclose whether it found murder in the first degree by reason of premeditation and malice aforethought or whether it was murder, robbery.

"The statements made by Mr. Carnes are substantially the same as those made by Mr. Bergin, but I think it should be pointed out that even though the testimony and the eyewitness to some of the striking indicated that the passenger in the vehicle was the one who did the striking that there is complete evidence that Mr. Bergin was the sole driver of the car, that Mr. Pesta was injured while a passenger in this vehicle, that he had to be carried—or there was testimony that he was dragged, I believe—to the place where his body was found and there was evidence that it had been done, a dragging through the sand was apparent to the state police officers when they arrived at the scene. In addition to that,

the court gave the jury instructions on accessory and there is no doubt from the testimony that Mr. Bergin was the driver of the car and it was his vehicle that was used on this date.

"There was further testimony that Mr. Pesta's wallet was missing and it was found some distance away on the next highway to the north in the field when dogs were used some week or nine days later to locate the wallet.

"There is also evidence that there was no money in the wallet at the time of its recovery.    *    *    *

"I do not feel that this is the type of letter which —or even if he were here to give testimony—that this court would grant a new trial. I think that we must have more substantial evidence than we have in this letter, and testimony, if he were here in court, to indicate that, first, that it is truly newly discovered evidence; second, that a different result might be achieved.

"Accordingly, the motion for new trial will be denied."

We are unable to find a clear abuse of discretion. See *People* v. *Dailey* (1967), 6 Mich App 99; *People* v. *Paugh* (1949), 324 Mich 108; *People* v. *Pizzino* (1945), 313 Mich 97; and *People* v. *Nunn* (1899), 120 Mich 530.

Affirmed.

All concurred.