John WALDEN

v.

W. S. NEIL, Warden, Tennessee State Penitentiary.

Edward WALDEN and Oddisy Walden

v.

W. S. NEIL, Warden, Tennessee State Penitentiary.

Civ. A. Nos. 5781, 5841.

United States District Court, E. D. Tennessee, S. D.

Oct. 30, 1970.

Robert A. Scott, Chattanooga, Tenn., for petitioners.

Tom J. Taylor, Dist. Atty. Gen., Cleveland, Tenn., David M. Pack, Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

These two cases involve petitions for habeas corpus wherein the respective petitioners seek to set aside their convictions and sentences in a consolidated criminal case entitled "State of Tennessee v. Cyril Lee Walden, Edward Walden, John Walden and Oddisy Walden," Docket Nos. 3746, 3747, 3748 and 3749 in the Circuit Court for Bradley County, Tennessee. In the aforesaid criminal proceedings the petitioners were jointly tried upon an indictment charging murder in the first degree and were convicted by a jury. The petitioner, John Walden, was sentenced 20 years and one day and the petitioners, Edward Walden and Oddisy Walden, were each sentenced to life imprisonment. In a memorandum opinion previously entered upon August 4, 1970, the Court has set forth the history of the state court litigation, including the post-conviction proceedings had in the state courts. Suffice it to say that each petitioner has exhausted his state court remedies and this Court would accordingly have jurisdiction of the present petitions.

These two habeas corpus proceedings, having arisen out of a single criminal trial and involving similar contentions, were heretofore ordered consolidated for trial. In Civil Action No. 5781, the petitioner, John Walden, contends that his constitutional rights were violated in the following manner:

(1) The trial court erred in admitting into evidence the confession of the petitioner where such confession was taken in violation of the holding of the Supreme Court in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and

(2) Petitioner was denied effective assistance of counsel.

In Civil Action No. 5841, the petitioners, Edward Walden and Oddisy Walden, contend that their constitutional rights were violated in the following manner:

(1) The trial court erred in admitting into evidence the confessions of the petitioners where such confessions were taken in violation of the holding of the Supreme Court in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; and

(2) The confession of Edward Walden was admitted against Oddisy Walden, although Edward Walden did not testify upon the trial, thereby depriving Oddisy Walden of his right to confront and cross-examine witnesses against him contrary to the rule laid down by the Supreme Court in the case of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.

■ In the answer to each petition the respondent has denied each contention of the petitioners. The answer was accompanied by a complete transcript of the proceedings both in the state criminal court, the state appellate courts, and in the state post-conviction proceedings. The answer was likewise accompanied by the affidavits of various law enforcement officers who participated in taking the confessions introduced at the criminal trial. On the basis of the record thus established, the respondent sought a summary judgment upon all matters in issue. However, for the reasons set forth in the Court's opinion filed herein on August 4, 1970, and in view of the failure

of the state court to establish either an adequate evidentiary record or to make adequate findings of fact in regard to the matters now in issue, this Court ordered that an evidentiary hearing be held in regard to all matters in dispute.

At the evidentiary hearing the petitioners each appeared and testified in support of their respective petitions. The respondent, in addition to relying upon the full transcript of all proceedings had in the state courts, and the affidavits of law enforcement officers, filed in support of the respondent's motion for summary judgment, produced the investigating officers and their testimony was taken at the evidentiary hearing. Also, at the evidentiary hearing copies of the confessions here in litigation were introduced, being Exhibits Nos. 1, 2 and 3 in the record. Upon request of counsel for the petitioners, the respondent has since filed data regarding polygraph tests administered the petitioners, and this data will be accordingly filed as Exhibit No. 4 in the record. The case is before the Court for decision upon the record thus established.

The following relevant facts appear either to be undisputed in the record or to be established by a clear preponderance of the evidence. Upon March 22, 1964, Cecil Caywood, a taxicab driver in Cleveland, Tennessee, disappeared while on duty, along with his cab. Two days later his body was found in a field near the outskirts of Cleveland and his abandoned cab was located nearby. Investigation reflected that Caywood had been slain by two bullet wounds in the head and by having his wrists slashed. There were blood stains in the cab. However, the investigation at that time failed to disclose the identity of any suspects. In October of 1965, some 18 months later, as a result of information obtained from an informant, Cyril Lee Walden was taken into custody and interrogated regarding the crime. As a result of this interrogation Cyril Lee Walden gave a confession on October 18, 1965, in which he implicated each of the petitioners along with himself in the commission of the crime. According to this oral confession, reduced to writing but not signed (Exhibit No. 3), Cyril Walden, the 18 year old nephew of John, Edward and Oddisy Walden, was present when a plan was made among the petitioners to rob Cecil Caywood. In furtherance of this plan, Caywood was called and after Cyril Lee, Edward and Oddisy Walden had each entered his cab, he was instructed to take them to a designated point outside of Cleveland for the ostensible purpose of picking up a package. Upon arrival at the designated location and upon turning into a side road, Edward Walden and Oddisy Walden each shot Cecil Caywood in the head and Oddisy Walden proceeded to rob him. When Caywood still gave evidence of being alive, Oddisy Walden slashed his wrists. The body was then drug a short distance away and abandoned in a field. The cab was driven a short distance and abandoned on the side road. Cyril Lee, Edward and Oddisy Walden then walked back to the highway where they were picked up by John Walden in the latter's automobile in accordance with a prearranged plan.

The confession of Cyril Lee Walden was taken late in the evening of October 18, 1965. That same evening, during the early morning hours of October 19, 1965, each of the petitioners, John, Edward and Oddisy Walden, were taken into custody. They were each interrogated during the course of the day on October 19, and that evening John Walden gave a signed confession implicating himself along with Cyril Lee, Edward and Oddisy Walden in the crime, his confession reciting substantially the same matters as stated in the confession of Cyril Lee Walden and as was summarized above (Exhibit No. 1). Upon the following morning, October 20, 1965, in the presence of investigating officers and in the presence of all four of the accused, Oddisy Walden and Edward Walden each orally confessed to their participation in the crime. Their confession was then reduced to writing by one of the officers present (Exhibit No. 2). This confes-

sion commences in the following manner: "Statement of Oddisy Walden and his brother, James Edward Walden—made to writer, Sheriff Sam Cannon, and T.B.I. Agent W. R. Chapman in the presence of Cyril Lee and John Walden." The confession then proceeds to be worded as the statement of Oddisy Walden, with the words at one point that "this Ed agreed was right." The confession was signed by Oddisy Walden. The signature of James Edward Walden also appears on the confession with the mark "X" following the same. These signatures appear on the righthand side of the document and at the end thereof. On the left side of the document and under the designation "witness" there appear the signatures of N. B. Matheny, W. R. Chapman, Jr. and Sam Cannon, the three investigating officers. Also in this location appear the signatures of John Walden and Cyril Lee Walden. The testimony reflects that Edward Walden is unable to read or write. His name was accordingly placed upon the document by John Walden with Edward Walden having placed his mark thereafter. The substance of this confession (Exhibit No. 2) is the same as the substance of the prior confessions of Cyril Lee Walden (Exhibit No. 3), and as summarized above, and of John Walden (Exhibit No. 1).

To the extent that it may be relevant, it should be noted that C. R. Chapman, Jr., one of the investigating officers present at the taking of the confession of John Walden and the confession of Oddisy and Edward Walden, was a member of the Tennessee Bureau of Investigation experienced in the use of the polygraph. He came to Cleveland on October 19, 1965, for the purpose of administering polygraph tests to each of the suspects. Polygraph tests were administered by him on that date to Oddisy Walden and to Cyril Lee Walden, each being given the test upon his written consent thereto, Oddisy Walden having been given the test prior to his confession and Cyril Lee Walden having been given the test after having given

his confession. The results of the tests were interpreted as confirming the truthfulness of the prior confession of Cyril Lee Walden, but reflecting that Oddisy Walden was untruthful in his denial of guilt in the course of the test. No polygraph tests were administered to either John or Edward Walden (Exhibit No. 4). It should be further noted that no reference was made to the polygraph tests in the course of the trial before the jury.

■ As regards each of the confessions hereinabove referred to, there has been no contention made that they were the result of any physical compulsion or mistreatment of the confessing party. Oddisy Walden does now contend that he was induced to confess upon the threat that if he did not do so his son and another brother would be charged with the offense. He contends that he made his confession to avoid this. The clear weight of the evidence reflects, however, that no threats, pressure, promises or other improper inducement was used in obtaining any of the confessions. Rather, it appears that they were each given voluntarily and with full understanding of their content and their consequence. It further appears that prior to the interrogation of each petitioner and prior to the taking of each confession, each petitioner was advised by one or more of the investigating officers of the following matters: (1) the nature of the charges against him or of the matters under investigation; (2) that the petitioner was not required to answer any questions or make any statement, but that if he did answer any question or make any statement, he should understand that the same could be used against him in any subsequent proceedings; (3) and that he was entitled to consult an attorney or could request the Court to appoint an attorney if he were not able to afford one. None of the petitioners made any request to consult an attorney. They each indicated at the time that they understood the matters of which they had been advised.

Upon October 25, 1965, an indictment was returned charging each of the petitioners, along with Cyril Lee Walden, with having committed murder in the first degree in connection with the slaying of Cecil Caywood. Upon this same date the trial judge appointed Richard A. Fisher, Charles Corn and H. D. Kerr to jointly represent each of the four defendants named in the indictment. The record reflects that each of the appointed counsel is a reputable and able attorney. Although Mr. Fisher and Mr. Corn had at that time practiced law only for a period of some one or two years, Mr. Kerr was an experienced attorney with many years of practice in the trial of criminal cases.

Prior to the trial of the petitioners, motions were made by their counsel for psychiatric examinations, for suppression of their confessions, and for a change of venue. The motion for change of venue was denied. The motion for psychiatric examination was granted and the motion for suppression of the confessions was deferred until the time of the trial. The psychiatric examinations having disclosed nothing significant, the criminal trial commenced upon February 2, 1966. In the course of the trial each of the confessions hereinabove referred to (Exhibits Nos. 1, 2 and 3) were introduced before the jury, after counsel for the defendant had duly objected thereto and after an examination of the sheriff in the absence of the jury regarding the circumstances surrounding the taking of the confessions. Without affording counsel any further opportunity to develop or present evidence regarding the admissibility of the confessions, however, the trial court thereupon admitted each confession. In addition to the confessions, the State presented the evidence confirming the homicide and presented the testimony of two relatives of the defendants who each confirmed that the defendants had made statements in their presence confirming their commission of the crime.

Each of the defendants testified in his own defense at the criminal trial other than Edward Walden, who did not take the stand and testify. The substance of the testimony of each defendant who did testify was that they had merely accompanied their father, Robert Walden, who was deceased at the time of the trial, and that he had shot and robbed Cecil Caywood in their presence, but without their prior knowledge or participation in the offense.

As noted at the outset of this opinion, the result of the criminal trial was that each of the four defendants was found guilty of murder in the first degree and was sentenced as previously stated. Following the affirmation of the convictions and sentences upon appeal, post-conviction proceedings were filed in the state court on behalf of each of the three petitioners herein. The same matters were raised in these state court proceedings as are now presented to this Court other than the present contention that the confession of Edward Walden was admitted against Oddisy Walden in violation of the rule laid down in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. The state trial court denied the post-conviction petitions of Edward Walden and Oddisy Walden without conducting any hearing thereon, but granted an evidentiary hearing on the contention of John Walden that he was denied the effective assistance of counsel. This petition was then denied, but without any findings of fact having been made by the state trial court.

Turning first to the contention made on behalf of each petitioner that his confession was taken in violation of applicable constitutional standards, it should be noted at the outset that neither confession has shown to be the result of any improper compulsion or undue influence. Rather, each petitioner appears to have given his confession voluntarily and understandingly. There is no evidence that any petitioner's individual "will was overborne" or that his confession was not the "product of a rational intellect and a free will." See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

■ As regards the admissibility of the confessions, there remains to consider the contention made on behalf of each petitioner that each confession was taken in violation of the petitioner's rights as pronounced in the cases of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. It should be noted that the decisions of Escobedo v. Illinois, *supra*, and Miranda v. Arizona, *supra*, apply only to trials begun after the date on which each decision was announced. See Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Accordingly, the *Escobedo* decision applies to trials begun after June 22, 1964, and the *Miranda* decision applies to trials begun after June 13, 1966.

The Walden trial began in February of 1966 and therefore this Court will be concerned solely with the applicability of the holding in Escobedo v. Illinois, *supra*.

The Supreme Court concluded in *Escobedo* that:

"* * * Where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the assistance of counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment (case cited) and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

Further, in attempting to explain the holding the Court stated:

"We hold only that when the process shifts from investigatory to accusatory —when its focus is on the accused and its purpose is to elicit a confession— our adversary system begins to operate, and, *under the circumstances here,* the accused must be permitted to consult with his lawyer."

The decision in *Escobedo* appears deceptively concise. That is, reading the decision in literal terms it appears that five factors must exist before there is a denial of the Sixth Amendment's Assistance of Counsel provision:

1) Focus on a particular subject;
2) The subject has been taken into police custody;
3) The police carry out a process of interrogations that lends itself to eliciting incriminating statements;
4) The suspect has requested and been denied an opportunity to consult with his lawyer; and
5) The police have not effectively warned him of his absolute right to remain silent.

However, practice under *Escobedo* both by the bar and the bench indicated that the decision by Justice Goldberg for the Court had far reaching consequences. As noted by Chief Justice Warren in his initial comments in *Miranda:*

"This case has been the subject of judicial interpretation and spirited legal debate since it was decided two years ago. Both state and federal courts, in assessing its implications, have arrived at varying conclusions.

The disagreement and scholarly comment arose with regard to when the *Escobedo* rationale became applicable. That is, in order for *Escobedo* to apply, must the suspect have made a request for counsel or must have been advised of his right to counsel or of his right to remain silent or of the fact that any statement made by him might be used against him as evidence in a trial? Of course, *Miranda* answered all of these questions in the affirmative. However, for two years from the decision in *Escobedo* the courts and the scholars split on the answers to these questions. See 10 A.L.R.3d at 1058.

For example, with regard to the requirement of request and subsequent denial of counsel by police officials, the Seventh Circuit in United States v. Childress, 347 F.2d 448 (C.A. 7, 1965) concluded that *Escobedo* had no application where the record did not establish that the defendant ever requested or was denied an opportunity to consult with a lawyer. On the other hand, the Fifth Circuit in Collins v. Beto, 348 F.2d 823 (C.A. 5, 1965) concluded that a prior request for counsel by a defendant was immaterial.

Although *Escobedo* is not entirely clear on this point, it appears that the logic of the Fifth Circuit's holding is more desirable for "We should not penalize the defendant who, not understanding his legal rights, does not make the formal request and by such failure demonstrates his helplessness." See Collins v. Beto, *supra*.

■ Applying the foregoing standards to the facts as hereinabove found in these habeas corpus proceedings, it is apparent that each confession admitted in the criminal trial was taken in compliance with the rules laid down in the *Escobedo* case. Each petitioner herein was effectively advised of his right to remain silent, of the fact that anything he said might be used against him, and of his right to consult an attorney. Additionally, it appears that petitioners were advised that they might have an attorney appointed for them if they were unable to employ one. Unlike *Escobedo*, no one contends here that an attorney was ever requested or that the petitioners were ever denied the right to consult an attorney. All of these matters appear to have been explained in an understandable manner, although one of the petitioners does now contend that he did not understand what was meant by "legal counsel." The contention made by each petitioner that his confession was taken in violation of the rules laid down in the *Escobedo* case are accordingly without merit.

John Walden next contends that he was denied effective assistance of counsel and in support of this contention asserts that his appointed counsel were not effective in investigating or opposing the admission of the confessions, that they did not effectively cross-examine the state witnesses and that they failed to call certain witnesses whom it is now alleged would have impeached certain state witnesses. It is the petitioner's contention that he should have been appointed separate counsel, rather than counsel seeking to jointly defend him with co-defendant Cyril Lee Walden, since the latter's mother and step-father were used as state witnesses.

■ The confessions having been found properly admitted, there could be no claim of ineffectiveness of counsel on this score. As regards any lack of vigor in cross-examining of witnesses, or lack of diligence in failure to call impeaching witnesses, these matters have not been borne out by the record. In this connection, it should be noted that a defense attorney cannot be faulted merely because his client is convicted. Lawsuits are not games of skill. Rather, they are searches for the truth. Lawsuits are not simply contests in which the outcome is wholly or even largely dependent upon the skill or industry of the legal counsel. Although skill and industry on the part of legal counsel is an important ingredient, ethical counsel do not make the facts, but rather must make do with the facts as they have been made by the accused and others. While those convicted of crimes may overlook these matters, they must never be lost sight of by the courts in passing hindsight judgment on the effectiveness of counsel. The only "facts" defense counsel were here given by their clients with which to work was the assertion that the defendants were merely innocently in the company of their father when he robbed and murdered Cecil Caywood. As Fate would have it, the father died before the trial so that his version of these matters could never be known. Upon the record in this case there is no showing of such ineffectiveness of counsel as to constitute a denial of due process or the violation of any of the accused's constitutional

rights to the assistance of counsel. Ineffective assistance of counsel means such conduct or omissions on the part of counsel as to make the trial a farce and a mockery of justice and shocking to the conscience of the Court. See Hayes v. Russell, 405 F.2d 859 (C.A. 6, 1969). Upon the record in this case, the acquittal of the accused would have been the shocking result, not his conviction.

■ There remains to consider the contention made on behalf of the petitioners, Oddisy Walden and Edward Walden, that their rights were violated by the admission of the confession of Edward Walden, who did not testify in the trial, thereby depriving Oddisy Walden of the right to confront and cross-examine a witness against him contrary to the rule laid down in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. While asserted as a constitutional error committed against both petitioners, it should be noted at the outset that only Oddisy Walden is in a position to make any contention in this regard. Edward Walden can make no such assertion, as Oddisy Walden took the witness stand and testified and was therefore available for cross-examination.

The Bruton decision stands for the general proposition that admission at a joint trial of a defendant's extrajudicial confession implicating a co-defendant violated the co-defendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment, despite instructions to the jury to disregard the implicating statements in determining the co-defendant's guilt or innocence.

The holding in Bruton v. United States has been held to apply retroactively. See Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100.

■ Returning to the substance of the Bruton holding, it should be noted that the decision is limited to extrajudicial statements that, in the language of the Bruton case, are "powerfully incriminating." In other words, "Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions. * * * It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information." In brief, to constitute reversible error uncorrectible through limiting instructions the statement must be "powerfully incriminating" as to the complaining defendant. See Wooten v. United States, 307 F.Supp. 80 (E.D.Tenn., 1969), aff. 420 F.2d 376 (C.A. 6, 1970).

In this regard, it has also been held that a violation of the constitutional principle established by the Bruton case can be held harmless, if the Court "declares a belief that it was harmless beyond a reasonable doubt." See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 reh. den. 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241. See also Wooten v. United States, supra; United States v. Levinson, 405 F.2d 971 (C.A. 6, 1968); United States v. Long, 415 F.2d 307 (C.A. 6, 1969); United States v. Clayton, 418 F.2d 1274 (C.A. 6, 1969).

■ The present case presents a rather unique situation in regard to applying the rule in the Bruton case. Here the "confession" of Edward Walden as admitted in the trial consists only of his affirming the correctness of the detailed confession made by Oddisy Walden. While the "joint" confession of Oddisy Walden and Edward Walden demonstrates a poor investigative technique, as previously held Oddisy Walden is in no position to complain of the use of his own confession. Nor, in the opinion of the Court, may he complain of the use of Edward Walden's affirmation of the correctness of his own confession. Under the circumstances here presented the Court is of the opinion that the admission of Edward Walden's confession was harmless error as to Oddisy Walden beyond any reasonable doubt.

Having concluded that no constitutional errors are shown to have been committed in the conviction of either of the petitioners, their respective petitions for habeas corpus will be denied. An order will accordingly be entered dismissing these lawsuits.