PEOPLE v MILLER

PEOPLE v EWING

PEOPLE v DAVIS

Docket Nos. 77-824, 77-825, 77-939, 77-945. Submitted November 7, 1978, at Detroit.—Decided January 17, 1979.

Dujuan Miller, Michael Davis and Kevin Ewing were each charged with one count of felony murder and three counts of armed robbery arising from an armed robbery of three persons during which one of the victims was killed. The three defendants were represented by separate counsel but tried jointly. Miller and Davis were found guilty as charged and Ewing was found guilty of second-degree murder, Recorder's Court of

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Jury §§ 139, 153.

[2] 29 Am Jur 2d, Evidence §§ 530, 531, 555-557.
  Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.
  Admissibility of pretrial confession in criminal case—Supreme Court cases. 4 L Ed 2d 1833; 12 L Ed 2d 1340.

[3] 29 Am Jur 2d, Evidence §§ 418, 583.
  68 Am Jur 2d, Searches and Seizures §§ 2-6.

[4] 29 Am Jur 2d, Evidence §§ 539, 540.
  Standing of defendant in Federal criminal prosecution to challenge accomplice's testimony as "fruit of the poisonous tree."

[5, 6] 75 Am Jur 2d Trial § 17.

[7] 75 Am Jur 2d, Trial §§ 20-24.

[8] 29 Am Jur 2d, Evidence § 539.

[9] 81 Am Jur 2d, Witnesses §§ 569-571.

[10] 81 Am Jur 2d, Witnesses § 575.

[11] 5 Am Jur 2d, Appeal and Error § 896.

[12, 17] 75 Am Jur 2d, Trial § 994.

[13] 75 Am Jur 2d, Trial §§ 588, 747.

[14] 81 Am Jur 2d, Witnesses §§ 571, 572.

[15] 30 Am Jur 2d, Evidence § 933.

[16] 40 Am Jur 2d, Homicide §§ 72, 184.
  Application of felony-murder doctrine where the felony relied upon is an includible offense with the homicide. 40 ALR3d 1341.

Detroit, Joseph A. Gillis, J. All three defendants appeal and the appeals were consolidated. Among the issues raised on appeal are 1) did the trial court err in using the "struck jury" method of selecting a jury, 2) was the initial confession of defendant Miller given following an arrest which was made without probable cause, 3) was the admission of the confession of each of the codefendants prejudicial to the other codefendants, 4) were the defendants entitled to separate trials, 5) did the prosecution improperly use prior misdemeanor convictions and a juvenile record to impeach defense witnesses, 6) did error result from alleged prejudicial remarks made by the prosecutor in closing argument, 7) was there juror misconduct requiring reversal and 8) did error result from the trial court's instruction to the jury on the effect of a defendant's not testifying at trial. *Held:*

1. The use of the "struck jury" method of selecting a jury does not warrant reversal of the convictions. The safeguards set out in the applicable court rule were all met in this case. This decision is not to be viewed as an endorsement of the method used.

2. Whether or not defendant Miller was actually arrested before he made his first statement to the police, there was probable cause to arrest him at the time. The confession was not taken in violation of his rights and the subsequent statements of defendants Davis and Ewing were not fruits of a poisonous tree.

3. The admission of the separate confessions of each of the three codefendants at their joint trial was not prejudicial to the other defendants since each defendant inculpated himself in his own confession.

4. There was no affirmative showing of prejudice to the substantial rights of any of the defendants by the refusal of the trial court to grant separate trials. There was no abuse of discretion in the trial court's refusal to grant separate trials.

5. Impeachment of a witness by use of prior convictions is not restricted to felony convictions, but may include convictions for misdemeanors punishable by more than 90 days in jail.

6. Use of a witness's juvenile record for impeachment purposes is not precluded where the witness is not a defendant.

7. The remarks by the prosecutor which the defendants allege to have been improper were in response to remarks made by defense counsel and no error resulted.

8. The discussion of the case between two of the jurors was

not ground for reversal, since, if it occurred, it occurred after the close of evidence.

9. Instructing the jury regarding the effect of the failure of a defendant to testify was not erroneous because defendants Miller and Ewing requested the instruction.

Affirmed.

R. M. MAHER, J., dissented. He would hold:

1. The use of misdemeanor convictions for impeachment purposes is prohibited.

2. A police preliminary complaint report was not admissible as evidence under the business record exception to the hearsay rule. However, the error complained of by counsel for one of the defendants was invited by trial counsel for the same defendant in that he had earlier introduced such a report as a business record. He may not now complain that admission of such reports is improper.

3. Defendants Miller and Davis were subjected to double punishment by being convicted of both felony murder and the underlying felony of armed robbery of the murder victim.

4. There should be a remand for a hearing on the issue of juror misconduct with an opportunity given to the mother of defendant Ewing, who allegedly overheard the conversation between the two members of the jury, to testify. If she is unable to testify on the matter, the jurors themselves should be summoned and questioned.

He would reverse the convictions of each of the defendants Miller and Davis on one of the counts of armed robbery and remand to the trial court for a hearing on the issue of juror misconduct.

### OPINION OF THE COURT

1. JURY — CRIMINAL LAW — JURY SELECTION — "STRUCK JURY" METHOD — COURT RULES.

A "struck jury" method of jury selection did not result in a miscarriage of justice where the method employed was in compliance with all but one of the requirements of the requisite court rule, and as to the requirement which was not met, the purpose behind it was fulfilled; however, the Supreme Court has provided for a different method of impanelling a jury, and the surest way of avoiding error, especially in the sensitive area of a defendant's right to a jury trial, is to follow the accepted method (GCR 1963, 511).

2. CONSTITUTIONAL LAW — CRIMINAL LAW — STATEMENTS BY DEFEND-
ANT — MIRANDA WARNINGS — ARREST — PROBABLE CAUSE —
STATUTES.

A statement made to the police by a defendant was not taken in
violation of the defendant's rights whether or not the defendant
had actually been arrested where full *Miranda* warnings had
been given and the police had sufficient probable cause to
arrest the defendant at the time the statement was given and,
consequently, subsequent statements given by two codefend-
ants, in response to the statement of the defendant, were not
the fruit of a poisonous tree (MCL 764.15[d]; MSA 28.874[d]).

3. CONSTITUTIONAL LAW — CONFESSIONS — FOURTH AMENDMENT —
VICARIOUS ASSERTION OF RIGHT.

Any alleged impropriety in procuring a defendant's confession in
violation of a Fourth Amendment right cannot be asserted
vicariously (US Const, Am IV).

4. CRIMINAL LAW — JOINT TRIAL — EVIDENCE — CONFESSIONS.

It is accepted procedure in joint trials, involving codefendants, to
allow a prosecutor to introduce a lawfully acquired confession
of one of the defendants, provided any reference to any of the
other defendants is deleted.

5. CRIMINAL LAW — TRIAL — JOINDER.

Joinder of criminal defendants for trial is usually within the
discretion of the trial court; the general rule is that a defend-
ant does not have a right to a separate trial.

6. CRIMINAL LAW — JOINT TRIALS — SEVERANCE.

Denial of a defendant's motion for a separate trial is not an abuse
of discretion unless there is an affirmative showing of prejudice
to substantial rights of the accused.

7. CRIMINAL LAW — TRIAL — JOINDER — SEVERANCE.

A defendant is entitled to a trial separate from a codefendant
who, it appears, may testify to exculpate himself and incrimi-
nate the defendant seeking a separate trial.

8. CRIMINAL LAW — CONFESSIONS — CODEFENDANTS — ANTAGONISTIC
POSITIONS.

The admission into evidence of the confessions of each of three
codefendants was not in error where each defendant's state-
ment inculpated his codefendants but also inculpated the de-
fendant making the statement.

9. WITNESSES — IMPEACHMENT — PRIOR CONVICTIONS — FELONIES —
   MISDEMEANORS.

   Impeachment of a witness by use of prior convictions is not
   restricted to convictions for felonies, but may include convic-
   tions of misdemeanors punishable by more than 90 days in jail.

10. WITNESSES — JUVENILES — JUVENILE RECORD — IMPEACHMENT —
    STATUTES.

    A statute does not preclude the use of a witness's juvenile record
    for impeachment purposes where the witness is not a defendant
    (MCL 712A.23; MSA 27.3178[598.23]).

11. CRIMINAL LAW — APPEAL AND ERROR — PROSECUTORS — REMARKS
    — RESPONDING TO DEFENSE COUNSEL.

    The allowance of remarks of a prosecutor which were induced by
    and made in response to statements of defense counsel does not
    constitute reversible error.

12. JURY — CRIMINAL LAW — COMMENTS BY JUROR — CLOSE OF
    EVIDENCE.

    Comments made among jurors after the close of evidence but
    before the jury has been instructed do not necessarily raise
    grounds for a reversal where a conviction has followed.

13. CRIMINAL LAW — INSTRUCTIONS TO JURY — ELECTION NOT TO
    TESTIFY — MULTIPLE DEFENDANTS.

    A trial court should instruct a jury upon the effect of the election
    of a defendant not to testify where such an instruction is
    requested by any defendant in a criminal case involving more
    than one defendant.

DISSENT BY R. M. MAHER, J.

14. WITNESSES — IMPEACHMENT — PRIOR CONVICTIONS — MISDEMEAN-
    ORS.

    *Impeachment of a witness through the use of a prior misde-
    meanor conviction is improper.*

15. EVIDENCE — CRIMINAL LAW — POLICE COMPLAINT REPORT —
    HEARSAY — BUSINESS RECORDS.

    *A defendant who at one stage of his trial introduced a police
    preliminary complaint report into evidence as a business record
    may not complain on appeal that the admission of such a
    report, at a later stage in the trial, under the business record
    exception to the hearsay rule was improper.*

16. HOMICIDE — FELONY MURDER — UNDERLYING FELONY — DOUBLE
    PUNISHMENT — NECESSARY ELEMENT.
    *A defendant's conviction for armed robbery should be vacated
    where the defendant was convicted of armed robbery and first-
    degree felony murder and the armed robbery was a necessary
    element of the felony murder.*

17. JURY — DISCUSSION OF CASE — EVIDENCE — INSTRUCTIONS TO
    JURY — ARGUMENT OF COUNSEL.
    *Jurors should not discuss a case among themselves until they
    have heard 1) all of the evidence on both sides, 2) instructions
    of the court as to how such evidence is to be considered by
    them and 3) arguments of counsel.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward R. Wilson,* Principal
Attorney, Appeals, and *William Wertheimer, Ti-
mothy Scallen,* and *Anne B. Wetherholt,* Assist-
ants Prosecuting Attorney, for the people.

*Lawrence R. Greene,* for defendant Dujuan
Miller.

*Thomas A. Law,* for defendant Michael Davis.

*Gerald S. Surowiec,* for defendant Kevin Ewing.

Before: ALLEN, P.J., and R. M. MAHER and J. E.
TOWNSEND,* JJ.

PER CURIAM. Defendants Miller, Davis and Ew-
ing were each charged with one count of felony
murder, MCL 750.316; MSA 28.548, and three
counts of armed robbery, MCL 740.529; MSA
28.797. The three defendants were represented by
separate counsel, but were tried jointly. A record-
er's court jury found defendants Miller and Davis
guilty as charged, and found defendant Ewing
guilty of second-degree murder, MCL 750.317;

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

MSA 28.549, and one count of armed robbery. All defendants received life sentences on each count on which they were convicted. All three defendants appeal and these appeals have been consolidated.

The charges stem from an armed robbery of the Pixie Restaurant in Detroit on August 11, 1976. Testimony and evidence at trial indicated that defendants Miller and Davis entered the restaurant and robbed at gunpoint William Beneson, Robert Tompkins, and Edward Cornwall. As Miller and Davis were leaving, Miller fired a shot which killed Beneson. Defendant Ewing provided Miller with the weapon and waited in a car outside the restaurant. The car was driven by David Lyles, a friend of the defendants, who was paid $3 by Miller to drive defendants to the restaurant and wait for them. After dropping them off, Lyles drove off with Ewing without waiting for Miller and Davis. Lyles was at one point arrested, but he was never charged with the crime.

Tompkins testified that Davis was one of the robbers, but was not sure if Miller was the other. Cornwall identified both Miller and Davis as the robbers. Pierr Harris, who knew both Miller and Davis, testified that she was near the Pixie Restaurant at the time of the crime, heard a shot, and saw Miller and Davis running from the restaurant. Lyles testified that after the robbery Miller had said that he killed Beneson. Confessions made by each defendant were admitted at trial, but none of the defendants testified. Miller called two witnesses in defense who contradicted the testimony of Harris. Other than that, the defense consisted of attacking prosecution witnesses.

On appeal defendants raise a plethora of issues, three of which merit special attention. The re-

maining may be disposed of summarily. When necessary, additional facts will be developed.

STRUCK JURY

Each defendant claims due process was violated and reversible error was committed because the trial judge selected the jury by what we shall call the "struck jury" method. Seventy-three members of the jury panel were identified and selected as prospective jurors. All defense counsel were given an opportunity to examine the juror sheets on the morning of the jury selection. None took advantage of the opportunity. Nor did any of the defense counsel submit questions for voir dire. The trial court itself questioned the jurors collectively and, at times, individually. After the court's voir dire, defense attorneys and the prosecutor were permitted to exercise their challenges on a rotating basis. The panel was reduced to 11 persons at which time 38 additional prospective jurors were seated and questioned. The procedure was repeated until 14 jurors remained. No juror was excused for cause. Miller and Davis each exhausted their 20 peremptory challenges and Ewing used 19 of his.[1]

Defendants contend that this procedure violated GCR 1963, 511.6 and infringed upon the exercise

---

[1] The method described above is not the only jury selection method termed the "struck jury" method. A perhaps more traditional procedure entailed actually striking the names of jurors from a jury list until only 24 remained and then proceeding normally as to the remaining 24. This method was authorized in Michigan by statute until 1963. MCL 618.45; MSA 27.1025. Repealed by MCL 600.9901; MSA 27A.9901. 1961 PA 236.

A method similar to that used here was approved by the Supreme Court in *Pointer v United States,* 151 US 396; 14 S Ct 410; 38 L Ed 208 (1894). Similar methods continue to be used in Federal courts. *Swain v Alabama,* 380 US 202; 85 S Ct 824; 13 L Ed 2d 759 (1965), *United States v Mathis,* 550 F2d 180 (CA 4, 1976). Some states also use the procedure. 50 CJS, Juries, § 5. Generally, there appears to be statutory authorization where the method is used.

of their peremptory challenges. The only specific claim of prejudice made by any of the defendants is that they could not keep track of the responses of the individual panel members. On the facts of this case we do not find reversible error.

We cannot accept the contention that defense counsel could not keep track of the responses of the prospective jurors. The struck jury method has been used and continues to be used in other jurisdictions and the attorneys there handle the situation. Nor do we find that the technical violation of GCR 1963, 511.6 mandates reversal. GCR 1963, 511, which provides for the impaneling of jurors, was designed with the usual method of starting with a panel of 12 prospective jurors in mind. Therefore § 6 of the rule becomes important in order to insure that the effect of subsequent challenges will not be diluted by exercising them on a diminishing panel, and then having the members replaced with persons even less desirable. Under the instant method this problem never arises because counsel know from the start and can decide even before their first challenge all of the individuals they wish to challenge. Hence, the purpose behind GCR 1963, 511.6 was achieved here. With the exception of § 6, the struck jury method used here was in compliance with all of the other requirements of GCR 1963, 511.

The evidence against defendants was overwhelming. In this case we do not find a miscarriage of justice and reversal is unwarranted. MCL 769.26; MSA 28.1096. In addition, defense counsel were informed by the trial court a month before trial that the struck jury method would be used and no objection was made until the first day of selecting the jury. Although the use of the struck jury method did not warrant reversal in this case,

our opinion should not be read as an endorsement of the method. Our Supreme Court has provided for a method of impaneling a jury, and the surest way of avoiding error, particularly in the sensitive area of a defendant's right to a jury trial, is to follow the accepted method.

## CONFESSIONS

Defendant Miller gave a false confession which exculpated him but inculpated both defendant Davis and defendant Ewing. Davis and Ewing were quickly arrested and they each confessed, but they incriminated defendant Miller. In the face of the contradiction between his statement and those of Davis and Ewing, Miller gave another confession which incriminated himself as well as Davis and Ewing. Except for Miller's first confession, all of the confessions described the same crime and events. There is no question that all defendants received full *Miranda* rights before any statements were given, and Miller received his rights twice, once before each of his confessions. All four of the confessions were introduced at trial.

On appeal it is contended that Miller's initial confession was given following an arrest made without probable cause. The police investigation of the crime continued over a month before defendant Miller was arrested. During this time many people were questioned about the crime and the name "Pops" came up several times in relation to the crime. Descriptions (but no names) of the robbers were obtained from Pierr Harris. Eventually the police learned that defendant Miller was known as "Pops" and they went to his home to question him. When the police met Miller they realized he matched very closely the description given by Harris. At that point Miller went with

them to the police station where he made his first statement.

Whether or not Miller was actually arrested before he made his first statement, the police would have had sufficient probable cause to arrest him. The information available to the police while at Miller's home gave them "reasonable cause to believe" that defendant committed the crime. MCL 764.15(d); MSA 28.874(d). *People v Green,* 70 Mich App 311; 245 NW2d 730 (1976), *lv den,* 399 Mich 855 (1977). Consequently, Miller's first statement was not taken in violation of his rights, and the subsequent statements of Davis and Ewing were not fruits of a poisonous tree. Miller's second statement was also validly taken and admissible. In passing we also note that defendants Davis and Ewing could not have relied on any impropriety in procuring defendant Miller's confession, because the impropriety involved infringement of a Fourth Amendment right and cannot be asserted vicariously. *Brown v United States,* 411 US 223; 93 S Ct 1565; 36 L Ed 2d 208 (1973), *United States ex rel Wright v Cuyler,* 563 F2d 627 (CA 3, 1977).[2]

Each defendant objected to the admission of his two codefendants' confessions because the confessions were, allegedly, prejudicial and violated their Sixth Amendment right to confront and cross-examine witnesses contrary to the rule of *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968). In the instant case, however, the confessions of each defendant had the names of

---

[2] One of the arguments made by defendants is that defendant Miller's arrest was the result of information received from unspecified informants, *i.e.,* the people the police talked with during their investigation. These individuals were not "informants". They were people who admittedly heard rumors and had no unusual or special relationship with any of the defendants. *Cf. People v Emmert,* 76 Mich App 26; 255 NW2d 757 (1977), and discussion in *People v Tooks,* 403 Mich 568; 271 NW2d 503 (1978).

any other defendant excised and replaced with John Doe #1, #2, or #3 as needed. Additionally, instructions were given that the confessions were to be used only in relation to the particular confessing defendant. In a multiple-defendant trial, confessions may be admitted where "any reference to one of the other codefendants is deleted" without violating *Bruton. People v Macklin,* 46 Mich App 297, 302; 208 NW2d 62 (1973).

The deletion of codefendants' names would usually be sufficient to avoid Sixth Amendment problems, but in this case all of the confessions gave a similar story, and defendants claim the net effect of reading all three confessions was to indicate that the deleted names were the names of the codefendants. We do not reach defendants' contention because each defendant admitted in his own confession the prejudicial information contained in the confessions of his codefendants. Where the various confessions are interlocking or substantially similar, the "powerfully incriminating extrajudicial statements of a codefendant" (391 US at 135) are not present as in *Bruton,* and hence it is harmless error at most to admit such statements. *Mack v Maggio,* 538 F2d 1129 (CA 5, 1976), *United States ex rel Duff v Zelker,* 452 F2d 1009 (CA 2, 1971), *cert den,* 406 US 932; 92 S Ct 1807; 32 L Ed 2d 134 (1972), *Walden v Neil,* 318 F Supp 968 (ED Tenn, 1970), *aff'd,* 451 F2d 1350 (CA 6, 1971).

Another issue relating to the confessions is raised by defendants Davis and Ewing. They each claim error in the admission of defendant Miller's initial statement which incriminated them and exculpated Miller. Neither defendant cites any authority for his position. False statements may be admissible, *People v Dandron,* 70 Mich App 439; 245 NW2d 782 (1976), so the question becomes

whether the admission of the statement violated *Bruton*. For the same reasons that the admission of Miller's second statement did not prejudice Davis and Ewing, his first statement did not prejudice them.

## SEPARATE TRIALS

Where two or more defendants are jointly charged with an offense, they may be tried jointly or separately in the discretion of the court. MCL 768.5; MSA 28.1028. *People v Hurst*, 396 Mich 1; 238 NW2d 6 (1976). The trial court's decision will be upheld absent an abuse of discretion, *People v Billingslea*, 70 Mich App 371; 246 NW2d 4 (1976), which requires an affirmative showing of prejudice to substantial rights of the accused. *People v Carroll*, 396 Mich 408; 240 NW2d 722 (1976). A defendant is entitled to a separate trial where defenses are antagonistic; that is, where it appears a codefendant may testify to exculpate himself and incriminate the defendant. *People v Hurst, supra.*

As mentioned earlier, each defendant's confession or statement inculpated the codefendants. But each statement also inculpated the defendant making the statement.[3] Therefore, the confessions did not incriminate codefendants *and* exculpate the confessing defendant. The result was that the statements did not represent antagonistic positions. At trial, Ewing's defense amounted to one of noninvolvement, but his own statement prejudiced him as much as that of either defendant Miller or Davis. Defendants Miller and Davis challenged the

---

[3] Defendant Miller in his second confession stated that his gun discharged accidentally. Defendant Davis confessed to participating in the crime, but said he was running out the door when Miller's gun discharged. Defendant Ewing admitted giving the gun to Miller and being in the car that took Miller and Davis to the restaurant.

accuracy of the observations of the prosecution witnesses and challenged the voluntariness of their confessions. None of these positions were antagonistic to one another. The pitting of defendants against each other, the animus of *Hurst,* was not present here.

## REMAINING ISSUES

Defendants Davis and Ewing raise several other issues, none of which warrant reversal.

Contrary to the argument of defendants, neither MCL 712A.23; MSA 27.3178(598.23), nor *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), precluded the prosecutor's questions relative to prior convictions of a defense witness. Impeachment is not restricted to convictions for felonies, but may include misdemeanors punishable by more than 90 days in jail. *People v McMillan,* 68 Mich App 113; 242 NW2d 518 (1976), *lv den,* 399 Mich 825 (1977). MCL 712A.23; MSA 27.3178(598.23), does not preclude use of a juvenile record to impeach a witness who is not the defendant. *People v Davies,* 34 Mich App 19; 190 NW2d 694 (1971).

Defendants contend that remarks in closing by the prosecutor resulted in prejudicial error. The very brief remarks complained of might have raised the jurors' sympathies, but the remarks were in response to defense remarks, and no error resulted. *People v Newby,* 82 Mich App 489; 266 NW2d 492 (1978), *People v Pomranky,* 62 Mich App 304; 233 NW2d 263 (1975).

Since, even if true, two jurors' comments overheard by Ewing's mother were made after the close of evidence, there is no ground for reversal. *People v Provost,* 77 Mich App 667; 259 NW2d 183 (1977).

No error occurred when defendant Davis objected to the instruction on the effect of a defendant not testifying at trial. The instruction was requested by defendants Miller and Ewing. *People v Hampton,* 394 Mich 437; 231 NW2d 654 (1975). Although not precisely on point, the Supreme Court's decision in *Lakeside v Oregon,* 435 US 333; 98 S Ct 1091; 55 L Ed 2d 319 (1978), further supports our rejection of defendant's contention.

Defendant Ewing, individually, raises four additional issues. There was ample record evidence that Ewing had the requisite intent. The police complaint report met the tests of and was admissible under the business records exception to the hearsay rule. MCL 600.2146; MSA 27A.2146. The factual issue of whether Ewing furnished the gun was clearly left to the jury. No prejudice resulted from the court's emphasis on the charge of aiding and abetting. Ewing was the only defendant charged as an aider and abettor and the instructions given followed CJI 8:1:02 through 8:1:05 practically verbatim.

Affirmed.

R. M. MAHER, J. *(dissenting).* I respectfully dissent. I agree that defendants suffered no prejudice from the method used to select the jury. I likewise agree that no prejudicial error resulted from the denial of separate trials and from the admission of the defendants' statements at trial.

Although I am of the opinion that impeachment by high misdemeanors should be permitted, I do not believe that the Supreme Court opinion in *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), can be read as authorizing such a rule. Until the Supreme Court holds otherwise, I believe that *Renno* must be construed to prohibit impeach-

ment by all misdemeanors, *People v Bernard Smith,* 81 Mich App 561; 266 NW2d 40 (1978), *People v Harris,* 86 Mich App 301; 272 NW2d 635 (1978). In the case at bar, moreover, the specific offense of which the witness had been convicted was never revealed. I fail to see how this Court can hold the impeachment proper because the offense was a high misdemeanor without knowing the nature of the offense. In view of the overwhelming evidence against defendants, however, I find the error harmless.

I also disagree with the majority's statement that a police preliminary complaint report is admissible as a business record. I share the skepticism expressed by Justice COLEMAN in *Moncrief v Detroit,* 398 Mich 181, 189; 247 NW2d 783 (1976):

> "The police report is a writing. It could be admitted into evidence as an exhibit if the proponent can show that it meets the requirements of the business records exception. However, because of the "nature" of police business and the circumstances under which such reports are usually made, the possibility of police reports so qualifying is unlikely.²"

---

"² See *Palmer v Hoffman,* 318 US 109; 63 S Ct 477; 87 L Ed 645 (1943); McCormick, Evidence (2d ed), § 308."

See also *Simpson v Burton,* 328 Mich 557; 44 NW2d 178 (1950). I do not agree that the preliminary complaint report was properly qualified in this case as a business record under the statute. However, the error was invited by counsel for the same defendant who raises the issue, in that he had earlier in the trial introduced a PCR as a business record. He may not now complain that admission of such reports is improper. See *People v Williams,* 84 Mich App 226; 269 NW2d 535 (1978).

In addition, I am of the opinion that defendants Miller and Davis were subjected to double punishment by being convicted of both felony murder and the underlying felony of armed robbery of the murder victim. I would *sua sponte* reverse their convictions for the robbery of the deceased, *People v Anderson,* 62 Mich App 475; 233 NW2d 620 (1975), *People v Longuemire,* 77 Mich App 17; 257 NW2d 273 (1977), *People v Robert G Thompson,* 81 Mich App 348; 265 NW2d 632 (1978), *lv gtd* 402 Mich 938 (1978), *People v Wilder,* 82 Mich App 358; 266 NW2d 847 (1978). See also *Harris v Oklahoma,* 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977).

Finally, I would remand for a hearing on the issue of juror misconduct. According to statements made by counsel for defendant Ewing and by Ewing's father, two jurors had been overheard by Ewing's mother discussing the case. At the time the alleged discussion took place, all the evidence had been presented and closing arguments had been completed. However, the jury had not yet received the court's instructions on the law. Defendant Ewing's counsel apparently was not immediately informed of the incident. After the jury had been instructed on the law, but before they began their deliberations, counsel for defendant Ewing informed the court that he had just learned that two jurors had been overheard by his client's mother discussing the case in the hall during the lunch break. Mrs. Ewing thereupon collapsed and was taken to the hospital, after informing her husband of the overheard conversation. Upon being informed of these allegations, the court ordered Mr. Ewing sworn and an inquiry held into the possible misconduct. Mr. Ewing testified that he did not hear the alleged conversation, and was

prevented from testifying regarding his wife's statements about what she heard by the prosecutor's hearsay objection. Counsel then asked the court to adjourn until the following morning, in the hope that Mrs. Ewing would be sufficiently recovered to testify to what she overheard. The court refused, and ordered the jury to begin deliberations.

The Supreme Court in *People v Hunter,* 370 Mich 262; 121 NW2d 442 (1963), held that it was reversible error for the trial court to instruct the jury that they could discuss the testimony during the trial, so long as they did not arrive at a verdict. The Court quoted at length from *Winebrenner v United States,* 147 F2d 322, 327-328 (CA 8, 1945), in which the United States Court of Appeals discussed the reasons jurors are not to discuss a case before it is submitted to them upon proper instructions:

"[J]urors are unschooled and inexperienced as to their duties in a criminal case, and they are not instructed as to those duties until all the evidence has been received, except as the court may in his admonition give them advice on their functions and how they are to be performed, and particularly as to how they should demean themselves; hence, the importance of this admonition. Without admonition their course is uncharted. Thus, it is not until the final submission of the case that the jurors are told that a defendant is under the law presumed to be innocent and not guilty and that that presumption attends him throughout the trial, so that it is incumbent upon the Government to prove the guilt of the defendant beyond a reasonable doubt. These instructions are deemed of vital importance as fixing the standards to be followed by the jury in determining the guilt or innocence of a defendant. If, however, the jurors may discuss the case among themselves, either in groups of less than the entire jury, or with the entire jury, they are giving premature consid-

eration to the evidence. By due process of law is meant
'a law which hears before it condemns; which proceeds
upon inquiry, and renders judgment only after trial.'
The jury should not discuss the case among themselves
because, first, they have not heard all of the evidence;
second, they have not heard the instructions of the
court as to how this evidence is to be considered by
them, and neither have they heard the arguments of
counsel."

In *People v Blondia,* 69 Mich App 554; 245
NW2d 130 (1976), this Court reversed for an in-
struction similar to that in *Hunter, supra,* on the
assumption that jurors who had been invited to
discuss the testimony during trial in fact did so.
Accord, *People v Monroe,* 85 Mich App 110; 270
NW2d 655 (1978). In the case at bar the prejudice
is even more obvious, for the jurors allegedly did
discuss the case during trial, despite repeated
instructions by the trial court not to do so.

I am of the opinion that the trial court should
have continued the matter until the following day
in order to facilitate a full investigation into the
allegations of juror misconduct. Had Mrs. Ewing
continued unavailable, the jurors themselves could
have been questioned about the incident, *People v
Bergin,* 16 Mich App 443; 168 NW2d 459 (1969),
*People v Markham,* 19 Mich App 616; 173 NW2d
307 (1969). I would remand to the trial court for
the purpose of taking Mrs. Ewing's testimony on
the matter. If she is unavailable, the jurors should
be summoned and questioned. If after a full inves-
tigation the trial court finds no misconduct, de-
fendants' convictions may be considered affirmed
by this Court. If the trial court finds prejudicial
misconduct, defendants are entitled to a new trial.