# Order

**Michigan Supreme Court**
**Lansing, Michigan**

March 9, 2012

3/December 2011

142234

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
       Plaintiff-Appellee,

v

MAURICE ANTHONY RICHARDS,
       Defendant-Appellant.

SC: 142234
COA: 293285
Macomb CC: 2009-000434-FC

_____/

On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we VACATE our order of May 18, 2011. The application for leave to appeal the October 19, 2010 judgment of the Court of Appeals is DENIED, because we are no longer persuaded that the questions presented should be reviewed by this Court.

       YOUNG, C.J. (*concurring*).

In 2008, this Court decided to institute a pilot project to test the efficacy of several proposed changes to court rules pertaining to jurors. The project began in late 2008 and ended December 31, 2010. On June 29, 2011, this Court issued an administrative order instituting many of the proposed jury reforms by amending MCR 2.512, 2.513, 2.514, 2.515, 2.516, and 6.414.[1] The rules went into effect on September 1, 2011, and the Court said it would review the efficacy of the changes in 2014.

---

[1] 489 Mich ___. Proposed MCR 2.513(K) allowed predeliberation discussions in criminal trials, see 482 Mich lxxxix, xcvii, while the newly enacted MCR 2.513(K) allows trial judges to permit jurors to discuss a case during midtrial recesses in civil cases only.

While the pilot project was ongoing, defendant was charged with carjacking and felony-firearm. Defendant admitted that he stole the victim's car, but he claimed that contrary to the victim's testimony, he never brandished a pistol. The trial judge announced to the jury during preliminary instructions that he was one of seven circuit judges who had been chosen to participate in a pilot program to test proposed changes to the way jury trials are conducted. The judge explained that contrary to past practices, the jurors would be permitted to discuss the evidence among themselves during the trial, as long as all the jurors were present in the jury room. He also explained that it was important for them to keep discussions tentative until they had heard all of the evidence, the court's instructions, and the attorneys' arguments. The jurors were also given notebooks with some of the instructions. Defense counsel objected to allowing the jurors to engage in predeliberation discussions. The jury ultimately convicted defendant as charged.

Defendant appealed as of right, claiming that the jurors' predeliberation discussions violated his due process right to trial by an impartial jury. The Court of Appeals rejected defendant's claim and affirmed his convictions in an unpublished opinion per curiam.[2] The Court of Appeals held that the jurors' predeliberation discussions did not violate defendant's right to a fair trial because the trial court's order was consistent with Administrative Order 2008-2 and because none of the potential problems with allowing jurors to engage in predeliberation discussions were implicated.

We granted defendant's application for leave to appeal and directed the parties to address "whether the circuit judge's instruction to the jury permitting jurors to discuss the evidence among themselves in the jury room during trial recesses violated the defendant's right to an impartial jury and a fair trial."[3]

Criminal defendants have a right to an impartial jury[4] and to a fair trial,[5] but there is no explicit constitutional right prohibiting jurors from discussing the case among themselves before the matter is submitted to them for decision. In this case, defendant

---

[2] *People v Richards*, unpublished opinion per curiam of the Court of Appeals, issued October 19, 2010 (Docket No. 293285).

[3] *People v Richards*, 489 Mich 924 (2011).

[4] The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." US Const, Am VI.

[5] The Fourteenth Amendment provides, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ." US Const, Am XIV, § 1.

claims a due process violation. In resolving a due process challenge, we must consider whether a particular procedure—such as the procedure forbidding jurors from undertaking predeliberation discussions—is fundamentally necessary to ensure a fair trial.[6] Since "[h]istorical practice is probative of whether a procedural rule can be characterized as fundamental,"[7] it is appropriate to consider the history of juries in English and American jurisprudence. The earliest English juries conducted their own investigations and asked questions at will during trial.[8] Over time, juries became less and less active.[9] By the eighteenth century, "the jury model available to the colonies was one based on almost total jury passivity."[10] Most, if not all, of the colonies had prohibitions on predeliberation discussions in place when the federal Constitution was ratified.[11] Thus, the historical practice in the United States since the time of ratification has been to prohibit predeliberation discussions.

While consideration of an historical practice is a relevant inquiry, a practice is not constitutionally required merely because it has traditionally been used in American courts. In *Williams v Florida*, the Supreme Court of the United States upheld Florida's use of 6-person juries, notwithstanding the common law tradition of 12-person juries.[12] In doing so, it established a framework to determine whether a particular aspect of a jury trial "has been immutably codified into our Constitution."[13] The Court concluded that the Framers did not "equate the constitutional and common-law characteristics of the jury."[14] Rather, a court must examine "the function that the particular feature performs and its

---

[6] *Duncan v Louisiana*, 391 US 145, 148-49 (1968).

[7] *Medina v California*, 505 US 437, 446 (1992).

[8] Dann, *"Learning lessons" and "speaking rights": Creating educated and democratic juries*, 68 Ind LJ 1229, 1232 (1993).

[9] *Id*. at 1232-35.

[10] *Id*. at 1235.

[11] *Id*. at 1235-36.

[12] *Williams v Florida*, 399 US 78, 103 (1970). While the issue in *Williams* was not identical to the issue presented in the instant case, the Court's analysis is helpful because the *Williams* Court was faced with the task of evaluating the constitutionality of a longstanding jury tradition that did not have explicit textual support in the Constitution.

[13] *Id*. at 90.

[14] *Id*. at 99.

relation to the purposes of the jury trial"[15] to determine whether that feature is "an indispensible component of the Sixth Amendment."[16]

To this end, the Court stated that the "essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence."[17] Thus, in *Williams*, the Court concluded that "the 12-man requirement cannot be regarded as an indispensable component of the Sixth Amendment."[18]

Applying the framework required by *Williams* leads me to conclude that allowing jurors to engage in predeliberation discussions neither violates the basic purposes of a jury nor prevents members of the community from using their common sense to decide a defendant's guilt by discussing among themselves the evidence as it is produced during a trial. In fact, there is evidence that predeliberation discussions enhance a jury's ability to reach a fairer and just result.[19]

Those who oppose a rule allowing predeliberation discussions typically raise five arguments in support of their claim that predeliberation discussions are unconstitutional. All are based on intuition about human behavior and have no real support in studies of jury behavior. First, they argue that "since the prosecution's evidence is presented first, any initial opinions formed by jurors are likely to be unfavorable to the defendant, and there is a tendency for a juror to pay greater attention to evidence that confirms his initial opinion."[20] Even if this unsupported assertion were true, it would have no bearing on the issue presented because jurors can rely on earlier-presented evidence more than later-presented evidence even when predeliberation discussions are not allowed. The

---

[15] *Id*. at 99-100.

[16] *Id*. at 100.

[17] *Id*.

[18] *Id*.

[19] Anderson, *Let jurors talk: Authorizing predeliberation discussion of the evidence during trial*, 174 Mil L R 92, 104, 109, 111, 113, 115, and 118 (2002). During Michigan's recent pilot program, 91 percent of jurors who responded indicated that predeliberation discussions helped them understand and recall evidence and that it helped them reach a correct verdict. Most of the participating judges who responded reported that they thought the practice increased fairness, efficiency, and understanding.

[20] *Commonwealth v Kerpan*, 508 Pa 418, 422 (1985).

prosecution traditionally presents its evidence first. This is an inevitable aspect of our system as the prosecution bears the burden of proving every element beyond a reasonable doubt and the defendant does not have a duty to present any evidence. There is also some contrary evidence that during predeliberation discussions jurors may be alerted to problems with their initial impressions and pay closer attention to potential flaws or strong arguments in opposition to their initial impressions.[21] Thus, the fact that the prosecution presents its evidence first does not create impartial juries or render trials unfair.

The second asserted problem with allowing predeliberation discussions is that "jurors might form premature conclusions without having heard the final arguments of both sides" or the court's final instructions on the law they are to apply to the facts of the case.[22] Again, individual jurors can just as easily reach premature conclusions in cases in which predeliberation discussions are prohibited. Jurors can also reach premature conclusions that favor a defendant just as easily as they can reach premature conclusions about a defendant's guilt.[23] Moreover, to reduce the effects of not having the final instructions on the law, the jurors in the instant case were given binders with some of the pertinent instructions at the beginning of the trial.

Third, opponents of predeliberation discussions argue that predeliberation discussions create partiality and render the trial unfair because "once a juror declares himself before his fellow jurors he is likely to stand by his opinion even if contradicted by subsequent evidence."[24] Again, this position is not based on anything more than a supposition about human behavior. Even if this were a valid assumption, the trial judge here gave repeated, emphatic, and clear instructions to the jurors to keep an open mind during predeliberation discussions. I believe that we should presume that the jurors followed those instructions just as we presume that they follow other instructions.[25] If

---

[21] In one study, jurors who were allowed to engage in predeliberation discussions "were no more likely to favor the testimony presented at the beginning of the trial . . . than they were to favor what they heard immediately at the end of trial before deliberations . . . ." Anderson, 174 Mil L R at 117-118; see also *id*. at 115.

[22] *Kerpan*, 508 Pa at 422-423.

[23] When reviewing the constitutionality of 6-person juries in *Williams*, the Supreme Court of the United States relied on studies to conclude that the advantage of having a slightly smaller jury "might just as easily belong to the State" as to the defendant. *Williams*, 399 US at 101.

[24] *Kerpan*, 508 Pa at 422.

[25] *People v Graves*, 458 Mich 476, 486 (1998).

jurors are told that predeliberation discussions are tentative, then a juror's personal embarrassment of retreating from an earlier stated opinion is significantly curbed. Interestingly, contrary to the assumption that jurors might become fixed in an early impression of the case, studies suggest that jurors allowed to engage in predeliberation discussions change their mind just as often as those who do not engage in predeliberation discussions.[26]

A fourth argument in opposition to predeliberation discussions is that "the defendant is entitled to have his case considered by the jury as a whole, not by separate groups or cliques that might be formed within the jury prior to the conclusion of the case."[27] Again, when, as in this case, the trial judge gives repeated, emphatic, and clear instructions that the jury may only discuss the case when all jurors are present and participating, we should presume that the jurors followed that instruction.[28] Admittedly, there is some evidence that jurors allowed to engage in predeliberation discussions have disobeyed instructions to only engage in discussions when all jurors were present.[29] However, jurors who are willing to disobey the instruction to not engage in predeliberation discussions without all the jurors present are just as likely to disobey a judge's instruction not to engage in predeliberation discussions at all. The fact that some juries may discuss the case without all members present also does not necessarily deprive defendants of the right to a fair trial or make juries impartial because it is the type of error that could benefit the defendant just as easily as it could benefit the prosecution.

The final argument against allowing predeliberation discussions is that such a practice allows alternate jurors to exert undue influence on the 12 people actually charged with reaching a verdict. As with the other criticisms, there is no claim or evidence that the practice leads to a prejudiced or biased jury or that it somehow makes the trial fundamentally unfair. Allowing alternate jurors to participate in predeliberation discussions does not benefit one side more than the other and thus does not render the jury impartial. Since this argument fails to demonstrate how allowing predeliberation discussions undercuts the basic purpose of a jury, it is unpersuasive.

Because I see no real evidence that generally allowing the jurors to engage in predeliberation discussions will render a defendant's trial unfair or render the jurors impartial, and defendant here does no more than recite the unsupported assertions that

---

[26] Anderson, 174 Mil L R at 115.

[27] *Kerpan*, 508 Pa at 422.

[28] *People v Abraham*, 256 Mich App 265, 279 (2003).

[29] Anderson, 174 Mil L R at 117.

predeliberation discussions are a bad idea, I concur in this Court's order denying defendant's application for leave to appeal the Court of Appeals' decision.

Our decision to deny defendant's application for leave to appeal the Court of Appeals' decision does not ignore or overrule precedent. Justice HATHAWAY claims in her dissenting statement that our decision fails to adhere to "precedent" set forth in *People v Hunter*.[30] However, this Court's discussion of predeliberation juror discussions in *Hunter* was clearly nonbinding obiter dictum. "Obiter dicta are not binding precedent. Instead, they are statements that are unnecessary to determine the case at hand and, thus, lack the force of an adjudication."[31] In *Hunter*, this Court held that the circuit court's instruction to the jury regarding self-defense was erroneous and "sufficiently prejudicial in our view to require reversal and remand . . . ."[32] After so holding, this Court "deem[ed] it appropriate to comment on 1 other aspect of this case," specifically, the circuit court's instruction to the jury at the beginning of the trial allowing the jurors to discuss the evidence among themselves throughout the course of the trial.[33] Because this Court had previously held that the self-defense instruction was sufficiently prejudicial to require reversal of the defendant's conviction, any "comment"[34] on the instruction allowing jurors to discuss the evidence throughout trial was obiter dictum and not "nationally accepted precedent" as Justice HATHAWAY claims. We are not bound to adhere to statements in *Hunter* suggesting "juries should be directed by the court [to not engage in discussions about the evidence] until ready to deliberate upon their verdict at the conclusion of the trial."[35] Accordingly, *Hunter* does not control the outcome of this case, and for the reasons previously set forth, allowing jurors to engage in predeliberation discussions in this case did not violate defendant's right to due process of law.

MARILYN KELLY, J. (*dissenting*).

I believe that allowing the jurors to discuss the evidence before deliberations began violated defendant's Sixth Amendment right to a fair trial and an impartial jury. For that reason I respectfully dissent.

---

[30] *People v Hunter*, 370 Mich 262 (1963).

[31] *People v Peltola*, 489 Mich 174, 190 n 32 (2011) (quotation marks and citation omitted).

[32] *Hunter*, 370 Mich at 269.

[33] *Id.*

[34] *Id.*

[35] *Id.*

This is a criminal matter. Defendant was jury convicted of carjacking and felony-firearm. When delivering preliminary instructions to the jury, the circuit court judge announced that his court was part of a pilot project to test proposed changes in the way jury trials were conducted.[36] The judge explained that, contrary to past practices, the jurors would be permitted to discuss the evidence among themselves when in the jury room with all jurors present. He further instructed them that it was important to remember that any discussion was tentative until they had heard all the evidence, court instructions, and attorneys' arguments.

The rule against allowing jurors to discuss the evidence before deliberation is deeply rooted in our jurisprudence. And as with many traditions, the rule has a purpose. It serves to ensure that an accused receives a fair trial with an impartial jury. Twenty-six states and the federal court system have statutes or court rules that explicitly bar predeliberation jury discussions in criminal cases or do so by caselaw.[37]

---

[36] Administrative Order Number 2008-2 authorized certain Michigan judges to participate in a pilot project to study the effects of proposed jury reforms. See 482 Mich 1xxxix. Those reforms included proposed changes to MCR 2.513(K), which pertains to jury deliberation. The pilot version, which was not adopted for use in criminal jury trials, see 489 Mich ___, provided that judges may inform jurors that they may discuss evidence among themselves during trial recesses, 482 Mich at xcvii. I opposed this inclusion then, 482 Mich at cix, as I do now.

[37] Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Idaho, Illinois, Iowa, Kansas, Maryland, Massachusetts, Michigan, Missouri, Montana, Nebraska, North Dakota, Oklahoma, Oregon, Pennsylvania, South Carolina, Texas, Utah, Wisconsin, Wyoming. Alas R Crim P 27(c)(1); Ariz R Civ P 39(f) (permitting discussion in civil cases but allowing court to prohibit it for good cause); Ark Code Ann 16-64-117 and 16-89-118; Cal Civ Proc Code 611; *People v Flockhart*, __ P3d ___; 2009 WL 4981910 (Colo App, 2009), cert gtd ___ P3d __; 2011 WL 597016 (Colo, 2011); *State v Washington*, 182 Conn 419, 429 (1980); Fla Stat 918.06; Idaho R Civ P 47(n); *State v McLeskey*, 138 Idaho 691, 697 (2003); Illinois Sup Ct R 436(b)(3); Iowa Ct R 1.927(1) and 2.19(5)(d); Kan Stat Ann 60-248; Kan Crim Pattern JI 3d 101.02; *Jones-Harris v State*, 179 Md App 72, 88 (2008); *Kelly v Foxboro Realty Assoc, LLC*, 454 Mass 306, 313 n 17 (2009); MCR 2.513(K); Mo Rev Stat 494.495; Mont Code Ann 25-7-402 and 46-16-501; Neb Rev Stat 25-1110; ND R Ct 6.11; Okla Stat tit 12, § 581; Okla Stat tit 22, § 854; Or R Civ P 58(C); *Commonwealth v Kerpan*, 508 Pa 418, 422-423 (1985); *State v McGuire*, 272 SC 547, 551-552 (1979); Tex R Civ P 284; Utah R Crim P 17(k); Utah R Civ P 47(*l*); Wis Stat 805.13(2)(b) and 972.01; Wyo Stat Ann 1-11-208 and 7-11-206(c); see also *United States v Jadlowe*, 628 F3d 1, 16-17 (CA 1, 2010).

As was pointed out in *Winebrenner v United States*,[38] allowing jurors to discuss the evidence during the presentation of a criminal case is inherently risky given the foibles of human nature. Jurors may draw conclusions without hearing all the evidence and without all needed instructions from the court.[39] The result is that the burden of proof is improperly shifted to the accused.

In our system, a person accused of a crime is innocent until proved guilty.[40] The burden remains on the prosecution to prove beyond a reasonable doubt that the accused is guilty, and the accused need not present evidence of his or her innocence. If jurors have decided the case for the prosecution before the accused has had the opportunity to present evidence, the burden has effectively shifted to the accused to change the jurors' minds. In my opinion, this violates the accused person's constitutional rights. No instruction to the jurors to correct the violation, however artfully contrived, can overcome this obstacle.

I believe that the instructions given to the jury could not overcome the Constitutional violation that occurred in this case. For that reason, I do not find compelling the prosecution's and the concurrence's reliance on the article by Anderson, *Let jurors talk: Authorizing pre-deliberation discussion of the evidence during trial.*[41]

First, Anderson recommends changes to the procedures used in federal military trials. In his summary, he states:

> From a military law standpoint, no constitutional, statutory, regulatory, or case-made rules are an impediment to authorizing pre-deliberation discussions among jurors. In addition, because the Sixth Amendment right to a trial by jury does not apply to the military, the precedential value of *Winebrenner* and its progeny to courts-martial practice is, arguably, nil.[42]

Earlier in the article, Anderson dismisses the concerns in *Winebrenner* by stating that cautionary instructions can overcome any rights violations.[43] However, the fact that he then states that the Sixth Amendment does not apply to the military courts illustrates that the answer is not so clear for nonmilitary courts.

---

[38] *Winebrenner v United States*, 147 F2d 322, 327-329 (CA 8, 1945).

[39] *Id*. at 328; see also *People v Hunter*, 370 Mich 262 (1963).

[40] *Coffin v United States*, 156 US 432, 453, 458-459 (1895).

[41] 174 Mil L R 92 (2002).

[42] *Id*. at 121.

[43] *Id*.

Second, Anderson discusses the jury reform projects in Arizona, California, Washington, D.C., and Colorado.[44] While it is correct that the Arizona reviewing committee did recommend that predeliberation discussions be allowed in both civil and criminal cases, the Arizona Supreme Court declined to adopt the change for criminal cases.[45] The court expressed "'concerns about a division among the federal courts of appeals on the question whether permitting [predeliberation] juror discussions deprives the defendant of the Sixth Amendment right to an impartial jury.'"[46] In addition, California and Colorado made modifications only to their civil jury procedures.[47] Washington, D.C., made no formal rule changes at all.[48] Despite any assertion to the contrary, to date there is no case precedent or formal or informal rule in the Washington, D.C., courts that permits predeliberation discussions.

For these reasons, I believe that instructions that allow predeliberation jury discussions in criminal cases are erroneous and the error cannot be harmless beyond a reasonable doubt. I would reverse the judgment of the Court of Appeals and remand the case for a new trial.

HATHAWAY, J. (*dissenting*).

---

[44] *Id*. at 104–112 (2002).

[45] See *id*. at 106.

As a result of the controversy over allowing predeliberation discussions in civil trials, the Arizona judiciary authorized an experiment to evaluate the changes discussed in Diamond, et al., *Juror discussions during civil trials: Studying an Arizona innovation*, 45 Ariz L R 1 (2003). Fifty civil trials and predeliberation jury discussions and deliberations were videotaped. The study found some benefits to the discussions, such as that they "facilitate understanding and enable jurors to correct impressions of the evidence when it is presented." *Id*. at 48. But other findings were negative. For example, "data also showed that the jurors often violated the admonition to discuss the case only when all of them were present in the jury room," *id*. at 33, and "it is all but impossible to determine a satisfactory answer to . . . whether the expression of early verdict preferences in a case causes the jury to arrive at a particular verdict," *id*. at 58-59. To date Arizona does not allow predeliberation discussions in criminal trials.

[46] Anderson, 174 Mil L R at 106, quoting Dann & Logan, *Jury reform: The Arizona experience*, 79 Judicature 280, 283 (1996).

[47] See *id*. at 108, 112.

[48] See *id*. at 110.

I fully share Justice MARILYN KELLY's concerns that allowing the jurors to discuss the evidence before deliberations violated defendant's Sixth Amendment right to a fair trial and an impartial jury. I write separately to express my consternation at this Court's failure to adhere to the constitutionally based and nationally accepted precedent set forth in *People v Hunter*,[49] which has protected due process rights in criminal jury trials for over 50 years. In *Hunter*, this Court unanimously held that predeliberation discussions among jurors violate the constitutionally afforded due process right to a fair trial.[50] The justices agreed that it is "clear beyond any doubt that jurors should not be encouraged to discuss evidence they have heard and seen during the course of trial until all of the evidence has been introduced, the arguments to the jury made, and the jury charged by the court . . . ."[51] In so holding, *Hunter* recognized that "[t]here is no right more sacred than the right to a fair trial. There is no wrong more grievous than the negation of that right. An unfair trial adds a deadly pang to the bitterness of defeat."[52]

By allowing the Court of Appeals' opinion to stand, this Court has rendered *Hunter* meaningless without expressly overruling it. This indirect overruling of *Hunter* casts aside firmly established caselaw without even a forthright acknowledgement that the Court is abandoning precedent, let alone offering reasons for doing so.[53] While the

---

[49] *People v Hunter*, 370 Mich 262 (1963).

[50] The concurring statement characterizes the holding in *Hunter* as dictum, and thus not binding on this Court. I disagree. Courts of this state have followed *Hunter* and treated it as binding precedent for more than 50 years. As stated by the Court of Appeals in this case:

> Defendant correctly observes that the trial court's instruction allowing the jurors to discuss the evidence during recesses is contrary to longstanding precedent. See *People v Hunter,* 370 Mich 262, 269-270; 121 NW2d 442 (1963)*,* and *People v Blondia*, 69 Mich App 554, 557-558; 245 NW2d 130 (1976). However, the trial court was expressly authorized by Supreme Court Administrative Order No. 2008-2 to instruct the jurors in the manner that it did. [*People v Richards*, unpublished opinion per curiam of the Court of Appeals, issued October 19, 2010 (Docket No. 293285), 2.]

[51] *Hunter*, 370 Mich at 269.

[52] *Id*. at 272 (quotation marks and citations omitted).

[53] When defendant's case was tried, the trial court was participating in a pilot project authorized pursuant to Supreme Court Administrative Order No. 2008-2. The pilot project was implemented on August 5, 2008, which was before I became a member of this Court. The project ran until December 31, 2010. Among the procedures authorized

justices of this Court may have debated the proper approach to stare decisis in the past,[54] it should cause considerable pause that precedent is now dealt with in such a cursory manner.

Furthermore, in light of today's terse order, it is unclear whether this Court has abandoned the constitutional rights recognized in *Hunter* for all future cases, or whether the constitutional rights of accused defendants were only abandoned for purposes of the pilot project.[55] The lower courts and litigants are simply left to speculate because today's order provides no guidance. In either event, it is troubling that this issue is only now being formally addressed by this Court rather than having been properly addressed at the beginning of the pilot project. Given the significance of the rights involved, this Court should have, at a minimum, formally addressed this issue before authorizing this pilot project, or the project should have been limited to cases in which both parties consented to the procedures.

Further, the concurring statement relies on the results of this Court's pilot project that tested these so-called "jury reforms." However, I am not persuaded that those results in any way diminish the constitutional concerns shared by the overwhelming majority of jurisdictions that have addressed this issue. Almost all jurisdictions in the country either expressly forbid or have not adopted this procedure[56] because of the clear constitutional concerns involved. Most importantly, as acknowledged in the concurring statement, the prohibition of predeliberation discussions among jurors has been part of the historical

---

by the pilot were interim deliberations in all cases, including criminal matters. Defendant objected to the use of interim jury discussions and argued that *Hunter* precluded such discussions. On appeal, the Court of Appeals acknowledged that *Hunter* was binding precedent but stated that this Court, through AO 2008-2, allowed *Hunter* to be disregarded for purposes of the pilot project. Unfortunately, this Court failed to offer any acknowledgment of, or explanation for, disregarding *Hunter* in the order authorizing the project.

[54] See *Univ of Mich Regents v Titan Ins Co*, 487 Mich 289 (2010).

[55] It remains unclear how many defendants were subject to this project. This Court received surveys concerning approximately 100 cases conducted as part of the project. These surveys were submitted by some, but not all of the courts that participated in the pilot project. But regardless of the number of defendants subjected to this pilot project, it is inappropriate to abandon constitutional rights merely to test a procedure.

[56] Twenty-six states and the federal court system have statutes or court rules that explicitly bar predeliberation jury discussions in criminal cases. Only two states, Indiana and Maryland, specifically authorize predeliberation discussions in criminal cases. The balance of the states do not provide for the use of the procedure in criminal cases.

criminal jury trial system in the United States since the ratification of the Constitution. This procedure has been embodied in our judicial system and considered a component of a fair trial since the 1700s. Changing such a historically established procedure should at a minimum carry a heavy burden of demonstrating why the established procedure is wrong, and why the new procedure will serve to significantly enhance the criminal justice system. The majority's order today instead stands mute in its rationale.

The concurring statement claims "there is evidence that predeliberation discussions enhance a jury's ability to reach a fairer and just result," citing the statistic from our pilot project that "91 percent of jurors who responded indicated that predeliberation discussions helped them understand and recall evidence and that it helped them reach a correct verdict." But this statistic, and the reliance on it, overlooks several important factors. First, our pilot project failed to demonstrate any *objective* evidence that interim jury deliberations will result in any substantial improvement in the jury trial system. The data from this Court's pilot project was compiled from a mere 30 jury trials.[57] Data from 30 trials is simply inadequate to produce anything more than anecdotal observations.

But regardless of the number of jurors' votes tallied, our pilot project failed to use control groups or employ independent monitoring techniques (such as videotaping jury sessions) to objectively evaluate the efficacy of the procedures. Among the out-of-state studies reviewed by this Court, only one study, conducted in Arizona, used objectively verifiable monitoring to determine the actual impact of juror interim deliberations.[58] Significantly, Arizona specifically declined to include criminal matters in the project because of the same constitutional concerns that Justice MARILYN KELLY and I have expressed. Even when tested in the civil trials, the Arizona study concluded that the overall impact of interim discussions was only "modest" and contained shortcomings.[59] Thus, where objective testing has been implemented, it has not demonstrated any substantial improvement in the jury system, let alone alleviated the due process concerns at stake in criminal trials.

---

[57] While the pilot project collected surveys concerning approximately 100 cases, only 30 cases were reviewed by this Court. The majority of the surveys collected were from criminal trials.

[58] The 2002 Arizona study used a control group by dividing juries into "discuss" and "no discuss" groups and the jurors were videotaped so that objective monitoring could be employed. See Shari S. Diamond and Neil Vidmar, *Juror Discussions During Civil Trials* <http://www.law.northwestern.edu/faculty/fulltime/diamond/papers/arizona_civil_discussions.pdf> (accessed June 2, 2011).

[59] *Id.*

The fact that a juror feels something is helpful in reaching a verdict cannot outweigh the constitutional rights implicated. For example, if a pilot project allowed jurors to talk to family and friends about evidence during trial, and the vast majority of jurors in the project concluded that consulting with family and friends was helpful in coming to the correct decision, would that mean that courts could jettison the obvious constitutional concerns raised by such out-of-court consultations? Certainly, speaking with trusted family members or friends to help form conclusions and opinions is, by human nature, a helpful and desirable way to decide matters; it is what people do everyday and are comfortable with. But it does not logically follow that, because a majority of jurors would find it helpful or desirable, the procedure is workable or desirable for the criminal justice system or that it would afford a fair trial. Similarly, simply because the vast majority of jurors might find conducting research on the Internet throughout the trial helpful in reaching the "correct" verdict,[60] it does not logically follow that the trial would be fair or that due process concerns would be eliminated. The issue is not whether a procedure is deemed helpful to jurors, but rather whether this historic change in the manner in which trials are conducted significantly improves the jury trial system, as demonstrated by objective and verifiable evidence, while maintaining the integrity and the fundamental fairness of the trial process.

Finally, I find no merit in the concurring statement's suggestion that because "there is no explicit constitutional right prohibiting jurors from discussing the case among themselves before the matter is submitted to them for decision," no constitutional right is at stake. There are a multitude of historical jury trial procedures impacting fundamental fairness in trials that are not expressly addressed in the Constitution. Following such logic, virtually all safeguards of fairness in trials, such as not allowing jurors to conduct research or to discuss evidence with those not on the jury, could be cast aside in favor of juror preference.

In sum, precluding predeliberation discussions among jurors has been an accepted part of our criminal jury system since the time of the ratification of our Constitution. Moreover, the established procedure is supported by thoughtful and well-

---

[60] Our pilot project asked jurors if interim deliberations assisted them in reaching the "correct verdict." I question the use of the phrase "correct verdict" because it requires a comparative analysis. But what would the juror be comparing the "correct" verdict to? What would an "incorrect" verdict be? The phrase presupposes that verdicts reached without using the procedure are somehow "incorrect," which is a supposition without support.

accepted reasons, and there is no objective evidence that there will be any substantial improvement in the criminal justice trial system by abandoning it. Accordingly, I dissent.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 9, 2012

Clerk

t0306